## NASIF v. UNITED STATES.
### No. 12084.

Circuit Court of Appeals, Fifth Circuit.
Dec. 30, 1947.

Rehearing Denied Feb. 2, 1948.

Robt. G. Chandler, of Shreveport, La., for appellant.

Malcolm E. LaFargue, U. S. Atty., and J. Lyle DeBellevue, Asst. U. S. Atty., both of Shreveport, La., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellant was convicted on a charge of criminal contempt of an injunction [1] issued in a suit,[2] and on findings[3] dealing not with the property at 1022 Dalzell Street, involved in this suit, but only with one specific piece of property located at 649 Dalzell Street.

She is here insisting that the facts, set out in notes 1, 2, and 3, as to the limited scope of the injunction suit and the undisputed evidence[4] show indisputably: that she did not know that she had been enjoined as to 1022 Dalzell Street; that she could not have intentionally violated the injunction; that "the prosecution and conviction run counter to fundamental principles of justice and fair play," and, therefore, the judgment may not stand.

We agree with appellant. The chancellor's most gracious writ of injunction is issued on equitable grounds to re-

[1] There was first a preliminary injunction issued Feb. 28, 1946, enjoining the defendant from violating the terms and provisions of the Rent Regulation for Housing and "particularly from demanding and receiving rent in excess of the maximum rent of $46.02 per month for the use or occupancy of the said house at 649 Dalzell Street." It was followed on June 26, 1946, by a permanent injunction, which, without mentioning 649 Dalzell Street, enjoined defendant "from demanding * * * rents in excess of those established in accordance with the Rent Regulation for Housing, or violating or attempting to violate any provisions of said regulation."

[2] Brought Dec. 31, 1945, this charged defendant with violating the Rent Regulations for Housing at premises known as 649 Dalzell St., Shreveport.

[3] These were that defendant had demanded and received excessive rents for use or occupancy of the premises at 649 Dalzell Street.

[4] Answering the rule to show cause, defendant, purging herself of intent to contemn, pleaded and testified that if there was a violation of the injunction it was not a wilful one done with the intent to violate; that the injunction was issued in respect of an entirely different property; that though during the six months' pendency of the suit for injunction defendant was making exactly the same charges as to 1022 Dalzell Street, for the making of which she is now sought to be held in contempt, no suggestion was made to her that she was doing anything wrong, and no complaint in respect of 1022 Dalzell Street was made in the suit; that, believing that she was in all respects complying with the law, she had changed the renting of 1022 Dalzell Street from an apartment to rent it as rooms by registration with the administrator; that nobody ever advised her that her registration statement was not correctly made or that her charges were excessive; that at no time did she have any idea that what she was doing at 1022 Dalzell Street was violative of the injunction issued in the suit involving 649 Dalzell Street; and that, therefore, she had not been, and could not have been, at any time guilty of willful or intentional contempt of the court's order.

strain actual or threatened injuries or violation. It may not be issued or, if issued, used as a catchpenny contrivance to snare the ignorant, the unsuspecting, the unwary.[5] Issued on considerations of conscience and intended to bind the consciences of those against whom it is issued, an injunction may not be issued or used as a catchall in aid of law enforcement officers by placing persons under general injunctions against committing criminal acts. This would be introducing a kind of government by injunction to deprive them of the constitutional rights normally accorded defendants prosecuted for crime, New York, New Haven and Hartford Railroad Co. v. Interstate Commerce Commission, 200 U.S. 361, 26 S.Ct. 272, 282, 50 L.Ed. 515. In that case the court, with clear and unanswerable logic, rejected the proposition there advanced "that, by the effect of a judgment against a carrier concerning a specific violation of the act, the carrier ceases to be under the protection of the law of the land, and must thereafter conduct all its business under the jeopardy of punishment for contempt for violating a general injunction." It said: "To state the proposition is, we think, to answer it. Swift & Co. v. United States, 196 U.S. 375, 25 S.Ct. 276, 49 L.Ed. 518. * * * To accede to the doctrine relied upon would compel us, under the guise of protecting freedom of commerce, to announce a rule which would be destructive of the fundamental liberties of the citizen." Cf. State v. Skagit River Navigation Co., 181 Wash. 642, 45 P.2d 27.

Congress in the Clayton Act, recognizing the anomaly in our institutions of permitting a writ of injunction to deprive persons charged with criminal acts of trial by jury, provided in Sections 21 and 22,[6] 38 Statutes 738, for a jury trial upon demand in contempt proceedings in such cases. It is true that in Section 24 of the same act,[7] it did in effect provide that a contempt of an injunction obtained by the United States did not require a jury trial. This, however, does not detract from, it only emphasizes the obligation of the court to issue specific injunctions in such cases and to proceed under them for contempt only in respect of the specific violations or threats of violation inquired into and enjoined.

■ It is not meant by this to say, of course, that where in an injunction proceeding to restrain violation of the Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq., as to a specific piece of property there is proof that the defendant has violated, or is threatening to violate, the act as to other properties than the one specifically described, it would not be proper to frame the injunction broadly enough to cover these other properties.

It is meant to say, though, that it is unthinkable that, without any proof of any kind as to violations or attempted violations at other places and only upon proof of violation at a particular point, an injunction could properly be phrased so broadly as to withdraw the defendant as to all O. P. A. violations from the general body of the citizenry to make him a general prisoner of the O. P. A. in custody of the injunction court. As appellant well says, while this might be a very convenient method of enforcing the orders of the price administrator, it would effectually destroy a defendant's status as a citizen with constitutional rights which he may invoke when charged with crime.

It is true enough that on its face the injunction here was general and that, having failed to appeal from the order, appellant cannot now obtain a modification of it as she might have done had she appealed.[8] But a modification is not what she seeks. She seeks a holding that the injunction is a general one against any future violation anywhere of the Rental Regulations and, therefore, is invalid as an attempt to deprive her at one fell swoop of her constitu-

---

[5] "To support a proceeding for contempt the writ of injunction or the restraining order should be clear and specific in its terms, and sufficient to enable a person bound by the writ or order to determine from its terms what he may and may not do. If such party does not in fact know to what the injunction applies he will not be punished for contempt. * * *" 43 C.J.S., Injunctions, § 259, paragraph b.

[6] Secs. 386, 387, Title 28 U.S.C.A.; Michaelson v. United States, 266 U.S. 42 at page 70, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451.

[7] Sec. 389, Title 28 U.S.C.A.

[8] N. L. R. B. v. Express Pub. Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930.

tional rights as a citizen, or, if it is valid, it is so only because, construed and applied, as judgments must be, by the record of the proceedings[9] out of which it issued, it must be held to be limited to 649 Dalzell Street and not to extend to 1022 Dalzell, a place not dealt with or even alluded to in the suit.

In the alternative, she urges upon us that if the injunction is to be held to be a general injunction and valid as such, upon the evidence in this case it cannot possibly be held that with knowledge that she was enjoined as to the premises at 1022 Dalzell Street also, she contemned and disobeyed the order.

The district judge was not insensible to the force of these contentions. At first he gave it as his opinion that defendant could not be held in contempt for acts done elsewhere than at 649 Dalzell. Confronted with and overborne by the generality of the terms of the final injunction, he succumbed to the Government's insistence that the injunction be broadly construed and broadly applied. Succumbing, he found defendant guilty in face of the undoubted fact that, whether or not she was guilty of willfully violating the Rental Regulations, she did not know that the injunction extended to 1022 Dalzell, and, therefore, she was not, she could not have been, guilty of willfully contemning the court by disobeying the injunction.

We are in no doubt that the record standing thus, no evidence having been offered in the injunction suit of any violation on the part of Mrs. Nasif, or of any threatened violation by her, except at 649 Dalzell Street, the injunction, though in general terms, must be construed as limited to the particular property and, as so limited, held valid. Neither are we in any doubt that if wrong in this and the injunction is to be construed as validly embracing the property at 1022 Dalzell, the judgment holding appellant in contempt may not stand, in the face of the uncontradicted evidence establishing that appellant did not know or believe that she was enjoined as to that property and, therefore, could not as to it have been in contempt of the injunction.

As to appellant's second point that what she did at 1022 Dalzell was, under the uncontradicted evidence, not in violation of rental regulations, and, if it was, the evidence indisputably established that the violation was not willful and the defendant could not, therefore, be guilty of violating them, we express no opinion. We hold only that the acts proven here did not constitute contempt of the injunction. We leave for determination in a criminal proceeding, if the United States decides to bring one, where defendant will have a right to trial by jury, whether defendant has been guilty of a criminal offense.

The judgment is reversed and the cause is remanded with directions to dismiss the contempt charge.

---

[9] State of Oklahoma v. Texas, 256 U. S. 70, 41 S.Ct. 420, 65 L.Ed. 831; Great Lakes v. Huffman, 319 U.S. 293, 63 S. Ct. 1070, 87 L.Ed. 1407; 34 C.J., Judgments, § 797, 49 C.J.S., Judgments, § 439.