This is a suit in which the three plaintiffs, tenants of the defendant landlord, seek to recover statutory damages resulting from payment of rent in excess of the maximum fixed by the Office of Price Administration for the character of accommodations furnished. After trial there was judgment in the District Court in favor of plaintiffs, assessing the damages at one and one-half times the overcharges, from which judgment defendant has appealed. Plaintiffs have answered the appeal, seeking the amendment of the damages to the extent of an allowance of thrice the amount of the overcharges, together with attorney's fees, interest and costs.
The material facts are relatively simple, and practically undisputed, with the exception of one feature. On December 6, 1945, Misses Marjorie and Marie Anglin and Frances Monk, plaintiffs herein, rented living quarters from the defendant, Mrs. Corinne Nasif, located at Municipal No. 1022 Dalzell Street in the City of Shreveport. The accommodations included a kitchen, bedroom, living room and bath, which constituted what is referred to in the record before us as the "lower left-hand apartment". The one disputed issue of fact which has substantial bearing on *Page 605 
the determination of this matter arises from the contention of plaintiffs that they rented the accommodations described as an "apartment", as opposed to the equally positive and emphatic claim on the part of defendant that she rented the accommodations described to the plaintiffs as "sleeping rooms". It is of the utmost importance to note that the descriptive terms "apartment" and "sleeping rooms" are subject to certain connotations which are accorded under the regulations of the Office of Price Administration.
Plaintiffs occupied the space described from about December 6, 1945, until on or about the 1st day of December, 1946, or a period of one year.
In September of 1945 the defendant, who had been renting the lower left apartment at the given address on the basis of a monthly rental of $75, was informed that the ceiling rental for such apartment, as fixed by the Office of Price Administration, was $45 per month. It is evident from the record that defendant immediately busied herself in the effort to ascertain some means whereby she might obtain a higher rental, and on October 26, 1945, she addressed a letter to Mr. J. S. P. Porter, Rent Director of the Office of Price Administration, advising him of her wish to convert the apartment into sleeping rooms. The practical purpose of this request was to comply with OPA regulations to such extent as would permit the defendant to rent the living room and bedroom of the erstwhile apartment as sleeping rooms at a rate of $30 per month each. In addition permission was requested to charge $5 per month for the privilege of the use of the kitchen for each tenant of the sleeping rooms.
Defendant received a reply from Mr. Porter in which he advised that the conversion contemplated was permissible, but requested that defendant call at the local office for the purpose of registering the rooms, which formality, again according to regulations, was required to be observed within a period of thirty days subsequent to rental of the rooms. As had been noted above, the defendant rented the accommodations on or about December 6, 1945, to these plaintiffs, and on January 4, 1946, which was within the thirty-day period fixed by the regulations, defendant filed registration statements with the Office of Price Administration at its office, in person, on forms furnished her by the employees of said administration.
On December 31, 1945, the Office of Price Administration filed an injunction suit, under which it sought to enjoin defendant from making charges in excess of rental regulations with respect to Municipal No. 649 Dalzell Street, Shreveport. A permanent injunction having been obtained in these proceedings, a criminal contempt proceeding for violation of the injunction was brought against this defendant by the government on April 2, 1947, and the defendant was convicted of contempt. The judgment of conviction was reversed and set aside on appeal to the United States Circuit Court of Appeal for the Fifth Circuit, Nasif v. United States, 165 F.2d 119.
The present action for damages by these plaintiffs, which appears to have been inspired by the suggestion of one of the agents of the Office of Price Administration, was filed March 6, 1947. The burden of plaintiffs' complaint is that they paid rental for the accommodations furnished at the rate of $75 per month for a period of one year, that is, from December, 1945, to December, 1946, which payment was $30 a month in excess of the $45 fixed as the maximum rental for the "apartment" by the Office of Price Administration. For the eight-month period on which plaintiffs would be permitted to recover, in view of the one year period of prescription, plaintiffs seek the recovery of damages in the sum of $720, aggregating thrice the amount of the overcharge, together with attorney's fees of $150.
The record before us is made up of stipulation of counsel, certain exhibits, specifically the letter addressed to the Rent Director by this defendant, his reply, and copies of the registration forms filed in the Office of Price Administration by defendant, and the transcript of testimony in the contempt hearing before the Honorable Ben C. Dawkins, Judge of the United *Page 606 
States District Court, Western District of Louisiana.
It is urged by zealous counsel for defendant in support of this appeal that it is necessary to determine as a fact of violation of existing regulations of the Office of Price Administration by this defendant in order to establish a basis for recovery of judgment in favor of these plaintiffs. We are entirely and completely in agreement with this proposition.
Careful examination of the record before us fails to disclose any facts which would support a finding that this defendant has violated regulations of the Office of Price Administration. It is obvious from the record and it is, in effect, conceded on behalf of defendant that she was motivated in her negotiations and dealings with these plaintiffs by the desire to charge and collect the maximum amount permissible under OPA regulations for the rental of her property. If in her pursuit of this purpose defendant violated the laws or regulations of the administrative bureau involved, then clearly she is liable for damages as fixed by such law and regulations. But we are unable to point out any facts which would justify a conclusion that defendant has been guilty of such infraction.
Learned counsel for plaintiffs strenuously urges that plaintiffs rented the accommodations as an "apartment" and that the rental charged was $30 per month in excess of ceiling prices for such accommodations when classed by the OPA as an "apartment". The testimony of Misses Marjorie Anglin and Frances Monk is stressed with reference to this point. Without detracting one whit from the credibility of the young ladies in question, we are impressed with the fact that the testimony of the defendant is equally as positive, and, in the light of surrounding circumstances, more persuasive. It is inconceivable to our minds that this defendant, called to account for what was apparently at that time an unintentional violation of price ceilings on the basis of an "apartment", would take the trouble to determine the means and methods of procuring a reclassification of the accommodations as "sleeping rooms" and then rent them to these plaintiffs as an "apartment". The effect of this consideration is strengthened by the further fact that the defendant registered the accommodations as sleeping rooms a little less than thirty days later, which registration was made in person on forms furnished by employees in the local Office of Price Administration in Shreveport.
In support of the claim that defendant misrepresented an alleged conversion of the apartment into sleeping rooms, counsel for plaintiffs urge, as did the government in the contempt proceeding, that the defendant made no changes in the appearance of the rooms nor in the fixtures and furnishings thereof. While this argument may possibly be persuasive as bearing upon the good faith and sincerity of the defendant, we do not find that it has any effect upon a determination of this matter, inasmuch as neither the government nor the witnesses for the government in the contempt proceeding, nor the plaintiffs in this cause, have pointed out any requirement of law or of the regulations of the Office of Price Administration which necessitated the actual accomplishment of physical changes as a condition precedent to a reclassification of the accommodations.
We refer particularly to a question and answer which were read by the Rent Attorney of the Office of Price Administration, a witness for the government in the contempt proceeding, from a pamphlet designated "Questions and Answers on Federal Rent Control", as follows:
"A. (reading) 'Question: I want to rent out all the rooms in my apartment as sleeping rooms only. Can I do this?
"A. Generally, if your apartment is vacant, you may rent out rooms for sleeping purposes only. However, you must register under the Hotel and Rooming-house Regulation, and you are subject to its provisions if you rent to more than two paying tenants.' "
Further reference to the testimony on the trial of the contempt proceeding reveals the following testimony, on direct examination, by the Rent Director himself:
"Q. In other words, in this case, Mrs. Nasif could rent the lower left apartment for Forty-five ($45.00) Dollars as an apartment, *Page 607 
and she could also, if she chose, or found tenants who wanted rooms, she could rent the two rooms for Thirty ($30.00) Dollars apiece under the two separate registrations and she could do it under either one?
"A. This is correct."
There appears to be no room for doubt, in view of the above quoted observations, that this defendant had the right, by the simple act of registration, to convert her apartment into sleeping rooms at a permissibly higher rental ceiling and that she had the further right, subsequent to registration, to rent the accommodations to tenants under either classification. To conclude that a landlord would go to all of this trouble and effort to comply with regulations which would permit the receipt of an advanced rental, only to forego such an advantage on the occasion of the first opportunity to profit therefrom, would be, in our opinion, a reductio ad absurdum.
Acknowledging with the greatest respect the force of the statement of Judge Dawkins at the conclusion of the trial of the contempt proceedings, which statement is set forth in the record, and which is reiterated in brief of plaintiffs' earnest counsel, we are unable to agree with the conclusion reached by the eminent jurist. We concede the obvious correctness of his assertion that he was impressed with the fact that this defendant was "doing her best to get around the law". But, to our minds, the question before us does not concern the defendant's motives nor the proposition of good faith, vel non, on her part, but simply and solely a determination as to whether she has been guilty of a violation of the regulations controlling. We are firm in the belief that plaintiffs have failed to show any violation which would entitle them to the statutory penalty.
For the reasons assigned, the judgment appealed from is reversed and set aside, and there is now judgment in favor of defendant rejecting plaintiffs' demands at their cost.
 On Rehearing.