565 F.2d 895
 16 Fair Empl.Prac.Cas. 387,
17 Fair Empl.Prac.Cas. 186,
15 Empl. Prac. Dec. P 8039,
17 Empl. Prac. Dec. P 8383
Willie Mae PAYNE et al., Plaintiffs-Appellees,
v.
TRAVENOL LABORATORIES, INC. and Baxter Laboratories, Inc.,
Defendants- Appellants.
 No. 76-1801.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 6, 1978.
As Amended on Denial of Rehearing and Rehearing En Banc
March 23, 1978.
 
 Stephen N. Shulman, Patricia Magee Vaughan, Washington, D. C., James L. Robertson, Greenville, Miss., for defendants-appellants.
 Nausead L. Stewart, Jackson, Miss., Richard T. Seymour, Washington, D. C., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before THORNBERRY, AINSWORTH and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 This Title VII class action appeal involves four disputed paragraphs of an injunction. The first paragraph, being a general injunction against employment discrimination on the basis of "color, race or sex," violates Fed.R.Civ.P. 65(d), which requires specificity and detail in injunctive orders. It must be set aside. The next three paragraphs involve educational employment requirements of tenth grade, twelfth grade, and college degree for various jobs, which requirements are alleged to discriminate against prospective black employees. Because plaintiffs lack standing to contest the tenth grade requirement, the injunctive relief ordered in respect to that education requirement is set aside. The relief ordered as to the twelfth grade and college degree requirements is supported by the record, and is affirmed. Both parties agree that a fifth paragraph relating to coverage for pregnancy and related disabilities must be vacated in light of General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). Because the district court's opinion has been published, it is unnecessary to relate again all of the details of this lawsuit. Payne v. Travenol Laboratories, Inc., 416 F.Supp. 248 (N.D.Miss.1976).
 
 General "Obey the Law" Injunction
 
 2
 Plaintiffs contend that a general injunction in this case should be permitted because the defendants' discrimination at the Cleveland, Mississippi, pharmaceutical manufacturing plant has been long, varied, and imaginative. Specific relief can be structured for the named plaintiffs, however, and the general relief in favor of a class of "all present, past and future black female employees and applicants at the Cleveland plant" carries the order beyond that permitted by the rules.
 
 
 3
 The paragraph enjoined defendants from discriminating on the basis of color, race, or sex in employment practices, prohibiting defendants from:
 
 
 4
 (1) Discriminating on the basis of color, race, or sex in employment practices or conditions of employment in defendants' Cleveland, Mississippi facility, against the named plaintiffs in the above captioned action or either of them, or any member of the class which they represent, as such class is defined in the court's memorandum of opinion this day released in said action.
 
 
 5
 This paragraph clearly fails to satisfy the requirement that an injunction "be specific in terms" and "describe in reasonable detail . . . the act or acts sought to be restrained . . . ." Fed.R.Civ.P. 65(d). This command of specificity is a reflection of the seriousness of the consequences which may flow from a violation of an injunctive order. See Pasadena City Board of Education v. Spangler, 427 U.S. 424, 438-39, 96 S.Ct. 2697, 2706, 49 L.Ed.2d 599 (1976). The word "discriminating," like the word "monopolizing" in Schine Chain Theatres, Inc. v. United States, 334 U.S. 110, 125-26, 68 S.Ct. 947, 92 L.Ed. 1245 (1948), is too general. The provision is more specific than Title VII itself only in that it does not prohibit employment discrimination based on religion and natural origin. See 42 U.S.C.A. § 2000e-2. Such "obey the law" injunctions cannot be sustained. See, e. g., NLRB v. Express Publishing Co., 312 U.S. 426, 435-36, 61 S.Ct. 693, 85 L.Ed. 930 (1941); Russell C. House Transfer & Storage Co. v. United States, 189 F.2d 349, 351 (5th Cir. 1951).
 
 Tenth Grade Requirement: Standing
 
 6
 The second paragraph prohibited defendants from:
 
 
 7
 (2) Requiring a tenth grade education (or its equivalency on a General Education Development (GED) test) of applicants for employment for operative positions in defendants' said facility.
 
 
 8
 Defendants attack this part of the injunction on the ground that the three named plaintiffs lack standing to question the legality of the tenth grade requirement. At the time crucial to the issue of standing, when the complaint was filed, all three of the named plaintiffs satisfied the tenth grade education requirement. Indeed, the trial court found that each of the named plaintiffs had fulfilled the requirement prior to submitting applications at the Cleveland plant. Payne v. Travenol Laboratories, Inc., supra, 416 F.Supp. at 251, 252. Thus plaintiffs can hardly argue that their rejections resulted from the imposition of a discriminatory educational standard.
 
 
 9
 To meet the requirement for standing under Article III, a plaintiff must establish either that the asserted injury was in fact the consequence of the defendant's action or that prospective relief will remove the harm. Warth v. Seldin, 422 U.S. 490, 505, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). As this Court recently noted in Thurston v. Dekle, 531 F.2d 1264 (5th Cir. 1976):
 
 
 10
 The fact that some members of the class may have had standing to raise this claim is irrelevant. . . . (T)he necessary requirement is for a named plaintiff to have standing at the time the litigation is filed. We are unaware of any case where any federal court has reached a substantive issue absent a named plaintiff who had standing at the time the action was filed.
 
 
 11
 Id. at 1269-70 (emphasis in original). Here, none of the named plaintiffs nor any member of the class had standing to challenge the tenth grade education requirement. From the class of "all past, present and future black female employees and applicants" the district judge excluded "all black female applicants who lack a tenth grade education or equivalency." Thus, unlike the situation presented by broadly defined Title VII classes without defined exclusions, no member of the class could claim to be aggrieved by the education requirement.
 
 
 12
 Citing Jenkins v. United Gas Corp., 400 F.2d 28 (5th Cir. 1968), plaintiffs argue that a named plaintiff should not be forced to remain unqualified for potential employment during the lengthy pendency of litigation challenging the employment criteria causing his disqualification. In Jenkins, we held that the named plaintiff's acceptance of a promotion, subsequent to the filing of a complaint alleging racial discrimination in the company's promotional system, moots neither the individual claim nor that of the class. If an employer could negate an employee's standing to challenge discriminatory employment practices by the simple expedient of offering him unilaterally the relief he seeks for the class, the individual-initiated enforcement structure of Title VII would be seriously jeopardized. Senter v. General Motors Corp., 532 F.2d 511 (6th Cir. 1976). The principle, however, does not apply to the instant facts. Plaintiffs, due to no act of Travenol, possessed tenth grade educations and therefore lacked standing at the time suit was filed.
 
 
 13
 This case must be distinguished from those in which the named plaintiffs may have little qualifications for a particular job, without regard to the disqualifying requirement they attack, such as the analyst jobs discussed in the portion of this opinion dealing with Travenol's college degree requirements. Here the named plaintiffs and each member of the class were qualified on the precise requirement which they seek to set aside.
 
 
 14
 Plaintiffs also attempt to establish standing by noting that during at least 80 of the 90 days preceding the January 29, 1970, filing of plaintiff Willie Mae Payne's first EEOC charge, she failed to satisfy the tenth grade education requirement. No evidence appears in the record to suggest that Ms. Payne applied for employment during this 80-day period. Plaintiffs argue that the question whether Ms. Payne applied is irrelevant in light of the recent Supreme Court case of International Brotherhood of Teamsters v. United States, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), which holds that seniority relief should not be denied to a class member who did not apply for a job when applying would be futile because of the employer's discriminatory practices. In this case, however, the trial court's definition of the class removed from consideration all applications for employment submitted to Travenol prior to March 3, 1970, so that the situation prior thereto is irrelevant on this appeal.
 
 
 15
 Because we hold that plaintiffs lacked standing to challenge the tenth grade education requirement, we do not address Travenol's alternative contentions, first, that plaintiffs failed to prove the requirement had a disparate impact on blacks and, second, that the requirement was justified by business necessity.
 
 Twelfth Grade Requirement
 
 16
 The third injunctive paragraph enjoins defendants from:
 
 
 17
 (3) Requiring a twelfth grade education (or its GED equivalency) as a condition of employment in office, clerical, technician and supervisory positions in defendants' said facility.
 
 
 18
 In respect to his provision, defendants contend that the court measured the degree of disparate impact by an incorrect statistical referent. Travenol, citing Robinson v. City of Dallas, 514 F.2d 1271 (5th Cir. 1975), argues that the trial judge should have drawn his statistics from Travenol's operative work force rather than the general population because most of the positions requiring twelfth grade educations are filled through the promotion of assemblers and material handlers. The evidence in this case, however, shows that although a large majority of the employees occupying positions subject to the twelfth grade requirement were promoted from operative jobs, a not insignificant number were hired from the general population. The trial court's consideration of general population data was therefore not improper. Evidence in the record amply supports the trial court's findings of disparate impact and lack of business necessity. The third paragraph of the injunction is therefore affirmed.
 
 College Degree Requirement
 
 19
 The fourth injunctive paragraph enjoins defendants from:
 
 
 20
 (4) Requiring a college degree as a qualification for the positions of systems, traffic, or scheduling analyst, in defendants' said facility.
 
 
 21
 Travenol challenges this part of the injunction on two grounds. First, it maintains that plaintiffs failed to prove the discriminatory impact of the college degree requirement. Travenol employed only five analysts subject to the college degree requirement and urges that positions having so few incumbents cannot properly be subject to statistical proofs of disparate impact. The proper focus when determining the disparate impact of an employment condition is on those excluded by the requirement, not on the number of positions to be filled as Travenol suggests. See Green v. Missouri Pacific Railroad, 523 F.2d 1290, 1294 (8th Cir. 1975). The record contains ample evidence that the college degree requirement, not adopted until 1968, rendered "ineligible (for employment) a markedly disproportionate number of Negroes . . . ." Griggs v. Duke Power Co., 401 U.S. 424, 429, 91 S.Ct. 849, 852, 28 L.Ed.2d 158 (1971). The defendants failed to prove that the requirement was justified by business necessity.
 
 
 22
 Second, Travenol maintains that plaintiffs' class action cannot properly extend to the employment practices applicable to analyst positions. In short, Travenol argues that the level of capability required for these positions is such that, even absent the college degree requirement, plaintiffs would never be serious candidates for them. Even assuming that the named plaintiffs were not strictly affected by the college education requirement, this Court's policy regarding class actions in employment discrimination cases dictates that plaintiffs could properly challenge Travenol's college degree requirement. Plaintiffs' action is an "across the board" attack on unequal employment practices alleged to have been committed by Travenol pursuant to a policy of racial discrimination. As parties who have allegedly been aggrieved by some of those discriminatory practices, plaintiffs have demonstrated a sufficient nexus to enable them to represent other class members suffering from different practices motivated by the same policies. Barnett v. W. T. Grant Co., 518 F.2d 543 (4th Cir. 1975); see Long v. Sapp, 502 F.2d 34 (5th Cir. 1974); Jack v. American Linen Supply Co., 498 F.2d 122 (5th Cir. 1974); Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir. 1969).
 
 
 23
 The injunction entered by the district court is reversed as to paragraphs (1) and (2) and the fifth unnumbered paragraph relating to pregnancy disabilities, and said paragraphs are hereby vacated and deleted. The injunction is affirmed as to paragraphs (3) and (4). Each party will bear his own costs in connection with this appeal.
 
 
 24
 REVERSED AND VACATED IN PART AFFIRMED IN PART.